# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

**DEKEITIVAN HOBBS,**                )
                                     )
      **Plaintiff,**                )      **Case No: 1:14-cv-03482**
                                     )
      **v.**                        )
                                     )      **Judge Ronald A. Guzmán**
**SLOAN VALVE COMPANY,**             )
                                     )
      **Defendant.**                )

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for summary judgment [51] is granted in part and denied in part. Defendant is entitled to summary judgment as to Count II of the complaint and the portion of Count I involving Plaintiff's January 2013 FMLA certification process. Plaintiff's motion for summary judgment [65] is denied.

## STATEMENT

Dekeitivan Hobbs ("Plaintiff") filed suit against his former employer Sloan Valve Company ("Defendant") on May 13, 2014, claiming interference and retaliation under the Family and Medical Leave Act ("FMLA") in connection with his termination. (Compl., Dkt. # 1.) This matter is before the Court on Defendant's Motion for Summary Judgment filed February 27, 2015 (Def.'s Mot. Summ. J., Dkt. # 51), and Plaintiff's Motion for Summary Judgment filed March 27, 2015 (Pl.'s Mot. Summ. J., Dkt. # 65).

For the reasons set forth below, the Court grants summary judgment in favor of Defendant on Count II of the complaint, alleging retaliation against Plaintiff for exercising his rights under the FMLA. Similarly, summary judgment is granted as to the portion of Count I alleging interference with Plaintiff's FMLA rights in regard to his January 2013 FMLA

certification process. Because a material fact issue exists as to the portion of Count I alleging interference with Plaintiff's FMLA rights with regard to his termination, summary judgment is denied as to that claim. Plaintiff's motion for summary judgment is denied.

**Facts**

*Defendant's policies*

Defendant is an Illinois corporation employing more than 50 employees, and manufactures restroom fixtures at a plant in Franklin Park. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 1; Pl.'s Stmt. Facts, Dkt. # 67, ¶ 2.) Non-management employees of Defendant at the Franklin Park facility are represented by the United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, and United Steel Workers of America Local #7999 (collectively, "the Union"). (Def.'s Stmt. Facts, Dkt. # 53, ¶ 3.) Beginning in October of 2010, Defendant and the Union were parties to a collective bargaining agreement ("the CBA") that governed the terms of employment for union employees. (*Id.*, ¶ 4.)

Relevant to this case is the CBA's attendance policy, which operates on a points system for unexcused absences. Under the policy, employees are assessed two "attendance points" for failure to report to work if they called in the absence prior to the start of their shift; they receive three points if they called in the absence after their shift started or failed to report the absence at all. (Def.'s Ex. H, Dkt. # 54-8, at Art. XIII Section 3(c).) Employees are disciplined with a counseling memo when they reach four attendance points in any rolling 12-month period, a written warning when they reach six, and termination when they reach nine. (*Id.* at Art. XIII

Section 3(d).) The CBA also provides that employees must notify Defendant of anticipated absences "as soon as possible" and provides that:

> notice can cover more than one (1) day if the employee so advises [Defendant], and keeps [Defendant] advised of his/her status thereafter. However, each scheduled work day shall be treated as a separate occurrence under this policy for purposes of attendance discipline.

(*Id*. at Art. XIII Section 3(f).)

*Plaintiff's pre-2013 FMLA history*

Plaintiff was hired by Defendant in 1997 and at all times relevant to this case worked as a stock selector at the Franklin Park facility until his termination. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 2.) Plaintiff was a member of the Union and therefore covered by the CBA. (*Id*., ¶ 3.) From 2003 through 2012, Plaintiff was approved for and utilized periodic FMLA leave for foot problems including plantar fasciitis. (Pl.'s Stmt. Facts, Dkt. # 67, ¶¶ 4, 7.) Plaintiff testifies that when his foot condition "flares up" he has difficulty standing and walking, which his job requires. (Pl.'s Ex. A, Dkt. # 68-1, ¶ 6.) Flare-ups generally came without warning; Plaintiff would simply call in on a given day if he was having a flare-up when he awoke in the morning. (Def.'s Ex. D, Dkt. # 54-4, pp. 22:1-23:3.) When Plaintiff was first approved for FMLA leave in 2003, Defendant administered its leave policy in-house. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 65.) Defendant began outsourcing leave administration in 2006, but after complaints about the way FMLA leave was administered – including a 2011 grievance by the Union – Defendant moved leave administration back in-house in 2012. (*Id*., ¶¶ 66-70.) In 2012, Plaintiff was approved for leave of up to eight episodes per month with each episode lasting up to eight hours, but did not use all of his permitted leave because he either did not need it or came to work hurt because he needed money. (Def.'s Ex. D, Dkt. # 54-4, pp. 20:21-21:19.)

*Plaintiff's January 2013 certification*

In January 2013, Plaintiff was required to recertify his eligibility for intermittent FMLA leave under the company's policies. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 22.) On January 14, 2013, Plaintiff's physician, Dr. Harris, faxed a FMLA certification form to Defendant. (*Id.*, ¶ 24.) Dr. Harris failed to fully answer some questions on the form, including: question 10 (whether the patient was referred to another health care provider); question 11 (whether the patient would require continuing treatment under a doctor's supervision); question 15 (whether the patient is unable to perform any of the functions in his job description)[1]; and question 21 (whether it is medically necessary for the patient to be absent from work during flare-ups). (Def.'s Ex. U, Dkt. # 54-21.) Question 22, which dealt with whether the patient's pattern of absences was consistent with his condition, was not answered – the form required an answer to the question only if a box were checked, and Defendant had inadvertently failed to check that box. (*Id.*; Pl.'s Stmt. Facts, Dkt. # 67, ¶ 14.) Later that same day, Defendant received another fax from Dr. Harris which included a corrected version of the form with questions 10 and 11 filled out. (Def.'s Ex. V, Dkt. # 54-22.) Plaintiff then delivered a corrected version of Dr. Harris's certification form to Defendant by hand prior to January 22, which contained revisions to most of the incomplete answers but still did not include an answer to question 22. (Def.'s Ex. W, Dkt. # 54-23.) Defendant received yet another fax from Dr. Harris sometime between January 14 and 22, which contained revisions to some answers but the same answers to questions 11, 15, 21, and 22 as the original form. (Def.'s Ex. X, Dkt. # 54-24.)

---

[1] While Dr. Harris failed to check the "yes" or "no" box for this question, he did write that Plaintiff has "difficulty standing" in the comments field intended to be filled out only if the physician checked "yes." (Def.'s Ex. U, Dkt. # 54-21.)

On January 17, 2013, Defendant notified Plaintiff that his certification form was incomplete as to questions 15, 21, and 22. (Def.'s Ex. Y, Dkt. # 54-25.) This notification also included a copy of Plaintiff's job description and the absence history necessary to answer question 22, both of which had been inadvertently omitted from the form originally submitted to Dr. Harris. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 31.) Defendant received a final fax from Dr. Harris on January 22, 2013, which included an answer to question 22 but no other pages of the certification form. (Def.'s Ex. Z, Dkt. # 54-26.) Accordingly, it is undisputed that no single form submitted by Dr. Harris included complete answers to all 22 questions. Defendant attempted to contact Dr. Harris to obtain clarification and reconcile the five versions of the certification form, but received no response.[2] (Def.'s Ex. J, Dkt. # 54-10, ¶ 15.) On February 19, 2013, Defendant informed Plaintiff via letter that his FMLA request was denied "based on the failure of Dr. Michael Harris to respond to our calls." (Def.'s Ex. AA, Dkt. # 54-27.)

*Plaintiff's March 2013 certification*

The same day Plaintiff received this letter, he immediately reapplied for FMLA leave and received a packet of application materials that he was required to complete by March 6, 2013. (Def.'s Stmt. Facts, Dkt. # 53, ¶¶ 35-36.) As part of this new application, Defendant received yet another form by fax from Dr. Harris on March 1, 2013. (*Id.*, ¶ 37.) This form did not answer questions 7 or 10, and answered questions 9 and 21 only partially. (Def.'s Ex. CC, Dkt. # 54-29.) The form also stated that Dr. Harris's last in-person visit with Plaintiff was in 2006, in apparent conflict with his certification for Plaintiff's January 2013 FMLA application. (*Id.*) Defendant

---

[2] Plaintiff disputes this fact, but cites only to his own deposition testimony to the effect that Dr. Harris later told Plaintiff he had not received messages from Defendant. This hearsay testimony is insufficient to rebut the sworn testimony of Defendant's leave administrator that the company attempted to contact Dr. Harris and that he did not respond.

then received a different certification form from Dr. Harris three days later, which corrected most of the prior form's deficiencies but did not fully answer question 9 and persisted in listing 2006 as the date of Plaintiff's last in-person medical treatment for his foot condition. (Def.'s Ex. DD, Dkt. # 54-30.) Dr. Harris faxed a third certification form to Defendant on March 27, 2013, which did not answer question 10 and did not fully answer question 21. (Def.'s Ex. EE, Dkt. # 54-31.)

While all of Dr. Harris's January 2013 certification forms stated that Plaintiff needed intermittent leave for up to eight eight-hour episodes per month, all of the March 2013 forms stated that Plaintiff needed leave for only four to five one- or two-day episodes per month. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 43.) At his deposition, Plaintiff admitted that he and Dr. Harris had changed the frequency of leave requested in order to increase the chances of Plaintiff's leave request being granted. (Def.'s Ex. D, Dkt. # 54-4, pp. 75:23-77:16.) On May 1, 2013, Defendant notified Plaintiff that he was provisionally entitled to FMLA benefits but was required to get a second medical opinion from another doctor at Defendant's expense. (Def.'s Ex. GG, Dkt. # 54-33.) This second opinion was provided by Dr. Donald Arenson, who submitted a certification form that answered questions 9 and 15 incompletely but also included a typed narrative report. (Def.'s Ex. II, Dkt. # 54-35.) Dr. Arenson's conclusions differed from Dr. Harris's, as Dr. Arenson concluded that Plaintiff's flare-ups would not require him to be absent from work and estimated the frequency of flare-ups as one daylong episode per month. (*Id.*)

In light of the discrepancy between the first and second medical opinions, Defendant required a third opinion and again provisionally approved Plaintiff's FMLA benefits pending such opinion. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 49.) Plaintiff requested and was allowed four episodes of intermittent leave during the period in which he was provisionally approved, but testified that he "worked hurt" on some occasions and did not request as much leave as he would

have taken if his initial FMLA certification had been accepted. (Pl.'s Stmt. Facts, Dkt. # 67, ¶ 17.) When Defendant decided to require a binding third medical opinion, Plaintiff was called up to Hendrix's office during his 10-minute break and informed of this decision. (*Id*., ¶ 18.) He then went to the Union steward's office to discuss the matter, returned to Hendrix's office to get additional paperwork, and went back to the Union office for further discussion. (Def.'s Stmt. Add'l Facts, Dkt. # 78, ¶ 1.) The entire process took 35-40 minutes, and Plaintiff received a written warning for failing to return promptly when his 10-minute break period ended. (*Id*.) This warning did not affect Plaintiff's pay and carried no tangible job consequences. (*Id*.)

Dr. Nikola Ivancevic completed Plaintiff's third medical evaluation on August 13, 2013, and listed "1 wk." in the section of the certification form for estimating the beginning and ending dates of Plaintiff's inability to do his job and estimated "Approx. 7 days for treatment and recovery" in the space for estimating Plaintiff's treatment schedule. (Def.'s Ex. LL, Dkt. # 54-38.) Dr. Ivancevic estimated Plaintiff's flare-ups as occurring in one to two episodes per month with a duration of seven days per episode. (*Id*.) Based on this opinion, Defendant certified Plaintiff for FMLA leave on August 21, 2013 and provided him with a Designation Notice listing the terms of his leave. (Def.'s Ex. N, Dkt. # 54-14.) This notice listed Plaintiff's FMLA leave requirements as: "Frequency: 1-2 episodes per month; Duration: 7 days episode [sic]." (*Id*.) The notice also included the following language regarding notification of absences:

> If you have not yet notified us of the exact dates of your expected leave, it is your responsibility to notify the Company each day you are to be absent for the reason identified in your leave request, in accordance with the Company's usual and customary procedures for reporting absences ... Your failure to notify the Company of your absences may result in delay or denial of FMLA leave and/or STD benefits, unexcused absences, and/or disciplinary action.

(*Id*.)

On the day Plaintiff's leave certification was approved, he spoke with Defendant's leave administrator, Mary Hendrix, about his FMLA leave. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 54.) Testimony as to what was said in this meeting varied slightly. Plaintiff testified that at this meeting, he asked for an example because he had never had leave structured in this way before. (Def.'s Ex. D, Dkt. # 54-4, p. 138.) He testified that Hendrix told him:

> If you call in tomorrow, you have up until seven days max to be off work. If you come back in on the third day, if you take of Monday, Tuesday, Wednesday, even though you got seven to be off for your flare-up, if you come back on Wednesday, that mean [sic] you only took three days, don't mean you still got them other four. That deletes one of your episodes.

(*Id.*, p. 138:12-19.) Plaintiff heard someone else in the room ask if the seven days were business days or included weekends; Hendrix clarified that it included weekends. (*Id.*, p. 140:12-18.) In Hendrix's deposition, she testified that she told Plaintiff that he could take off one to two episodes per month, with "up to seven" days off per episode, and the omission of the words "up to" on the Designation Notice she drafted was inadvertent. (Def.'s Ex. S, Dkt. # 54-19, pp. 198:14-199:3.) She also testified that she told Plaintiff that "[i]f he took off one day, as I recall, that would be one episode. If he called out tardy three days later, that would be his second episode. And that would be all he would have for that month." (*Id.*, pp. 199:19-200:3.) Finally, she insisted that Plaintiff's main questions at the meeting concerned the frequency and duration of his FMLA leave, and they did not discuss the call-in procedure. (*Id.*, p. 205:3-8.)

*Plaintiff's absences and termination*

Early in the morning on September 3, 2013, Plaintiff called Defendant's absence reporting line and left the following message:

> Yes my name is Keith Hobbs, clock #1991, today's date is Tuesday September the 3rd, the time is 4:40 a.m. I will not be in today due to my FMLA. Once again, my name is

Keith Hobbs, clock #1991, today's date is September the 3rd, which is Tuesday. The time is 4:40 a.m. I will not be in today due to my FMLA, my supervisor's name is Lorenzo Swift. Once again, my name is Keith Hobbs, clock #1991 today's date is September the 3rd and the time is 4:40 a.m. I will not be in today due to my FMLA. Thank you.

(Def.'s Ex. R, Dkt. # 54-18) (audio message.) Plaintiff was then absent from work on September 3, 4, 5, 6, and 9 of 2013 due to his foot condition. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 11; Pl.'s Stmt. Facts, Dkt. # 67, ¶ 24.) While he testified that he did not read the CBA because he had worked at the company long enough to know the procedures, he knew that if he was absent, he was required to call it in. (Def.'s Ex. D, Dkt. # 54-4, p. 30:11-21.) He did not call in on September 4, 6, and 9 to report the absences, but did leave another message on September 5, stating "I am calling just to let you know for the record that I am still off due to my FMLA" (Def.'s Stmt. Facts, Dkt. # 53, ¶¶ 14-15; Pl.'s Stmt. Facts, Dkt. # 67, ¶ 25.) While he was absent from work on September 5, 2013, Plaintiff saw Dr. Ivancevic and, despite no change in his underlying foot condition asked the doctor to change the frequency and duration of his FMLA leave certification. (Def.'s Ex. D, Dkt. # 54-4, pp. 173:22-176:24.) Dr. Ivancevic changed his leave recommendation from one to two episodes of seven days each per month to five episodes of two to three days each per month. (Def.'s Ex. YY, Dkt. # 54-46.) After receiving Dr. Ivancevic's altered recommendation, Defendant approved the change on September 18, 2013. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 77.)

After he returned to work, Plaintiff was called in to meet with managers for over one and a half hours. (Pl.'s Stmt. Facts, Dkt. # 67, ¶ 32.) During this meeting, Plaintiff was told he was being assessed attendance points and objected, as he believed his call on September 3 triggered seven days of leave and no further calls were necessary. (Pl.'s Ex. D, Dkt. # 68-4, p. 147:1-10.) Plaintiff asked to leave and go back to work several times, but was refused permission to leave. (*Id.*, pp. 147:20-149:11.) The meeting became contentious; when Plaintiff refused to sit back

down the manager present showed him a card or book marked "insubordination," said "if I was you, I sit [sic] back down because I can get you on this here," and accused Plaintiff of pointing at the manager and raising his voice. (*Id*., pp. 194:24-150:13.) After the meeting, Plaintiff was assessed 3 points for each of the three days of his absence for which he did not call in and was terminated on October 13, 2013 for having accumulated nine or more points. (Def.'s Stmt. Facts, Dkt. # 53, ¶¶ 7, 16, 60.) Had any of the three absences been counted as FMLA leave, Plaintiff would not have reached 9 points and would not have been terminated. (Pl.'s Stmt. Facts, Dkt. # 67, ¶ 30.) A suspension pending discharge hearing and a later discharge hearing were held in accordance with the CBA prior to Plaintiff's termination, but he did not receive a written warning. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 57; Pl.'s Stmt. Facts, Dkt. # 67, ¶ 29.) In the previous ten years for which Plaintiff was approved for FMLA leave, there is no evidence that he ever received points for a "no call/no show" under the attendance policy. (Pl.'s Stmt. Facts, Dkt. # 67, ¶ 23.)

*Evidence as to other employees*

As Plaintiff claims that Defendant retaliated against him for exercising his rights under the FMLA, Defendant's treatment of similarly situated employees is relevant and the parties identify several comparators. Employee I.C. was initially on FMLA leave and was asked to recertify, during which process she was erroneously told that her certification must come from a specialist. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 63.) The specialist denied her FMLA certification, and she was subsequently suspended pending discharge after exceeding 9 attendance points. (*Id*.) At her hearings prior to discharge, Defendant realized she should not have been instructed to secure certification through a specific doctor, and gave her additional time to certify her

absences. (*Id*.) Employee D.C. was initially approved for intermittent leave, and called in every day he took leave. (*Id*., ¶ 64.) He then switched to a period of continuous leave, and notified Defendant of the exact days of his absence prior to going on leave. (*Id*.) Employee M.J. was suspended pending discharge after reaching 9 attendance points, based on Defendant's belief that he failed to return to work after his FMLA leave expired. (*Id*., ¶ 72.) He was not terminated after producing letters from Defendant's leave administration servicer stating that he still had several unused days of leave left, thereby showing that Defendant's conclusion that he overstayed his leave was erroneous. Employee J.A. was not on FMLA and was suspended pending discharge after exceeding 9 attendance points. (Pl.'s Stmt. Facts, Dkt. # 67, ¶ 33.) He was not discharged after Defendant determined that he had not been given adequate warning. (*Id*.) Discovery also revealed a total of 13 employees other than Plaintiff who were approved for intermittent leave of more than one day, with three having leave for episodes of definite duration and the other ten having ranges (for example, "1-3 days"). (Def.'s Ex. WW, Dkt. # 59-4.) All of these employees called in each day of their absence when on their intermittent leave. (Def.'s Stmt. Facts, Dkt. # 53, ¶ 74.) Additionally, 13 employees other than Plaintiff were terminated for reaching nine points under the attendance policy, of whom five were certified for active FMLA leave. (Def.'s Ex. XX, Dkt. # 59-5.)

## **Summary Judgment Standard**

A district court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute exists as to any material fact, a court must view all the

evidence and draw all reasonable inferences in favor of the non-moving party. *See Weber v. Univ. Research Assoc., Inc*., 621 F.3d 589, 592 (7th Cir. 2010). It is not appropriate for the court to judge the credibility of the witnesses or evaluate the weight of the evidence; the only question on summary judgment is "whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Summary judgment is appropriate only if the record, taken as a whole, establishes that no reasonable jury could find for the non-moving party. *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004).

The FMLA gives eligible employees with a serious health condition that renders the employee unable to perform his job the right to take a certain amount of medical leave during each twelve-month period. 29 U.S.C. § 2612. Under the statute, an employee on leave is entitled to be restored to the same or an equivalent position that he had before he took qualifying leave. *Id.* § 2614(a)(1)-(2). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. *Id.* § 2615(a)(1). The statute also affords protection to employees who are retaliated against because they exercise their right to take leave, as 29 U.S.C. § 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter" and 29 U.S.C. § 2615(b) makes it unlawful to "discharge" or "discriminate" against a person for taking part in proceedings or inquiries under the FMLA. Courts have construed these provisions as establishing a cause of action for retaliation under the FMLA. *See Lewis v. Sch. Dist. #70,* 523 F.3d 730, 741 (7th Cir. 2008); *Kauffman v. Fed. Express Corp.,* 426 F.3d 880, 884 (7th Cir. 2005).

**Discussion**

Plaintiff filed this suit on May 13, 2014, alleging two counts under the FMLA. Count I of the complaint is founded on the FMLA's prohibition on "interference" with the exercise of statutory rights, and Count II is founded on the statute's prohibition on retaliation. Defendant has moved for summary judgment on both counts, and Plaintiff has moved for summary judgment only as to Count I.

*Count I: Interference*

To establish a claim of FMLA interference, an employee "need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW Inc*., 472 F.3d 471, 477 (7th Cir. 2006). To establish such a claim, Plaintiff must show that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Id*. at 477. Plaintiff bears the burden of proving these five elements. *See Darst v. Interstate Brands Corp*., 512 F.3d 903, 908 (7th Cir. 2008). In this case, there is no dispute that Plaintiff was an eligible employee, and Defendant was covered by the FMLA.

Count I of the complaint alleges that Defendant interfered with Plaintiff's FMLA rights by (1) denying recertification in January 2013, and (2) assessing attendance points for the September 2013 absences and terminating Plaintiff as a result. (Compl., Dkt. # 1, ¶¶ 44-46.)

Interference in the January 2013 certification

The complaint alleges that Defendant's "denial of [Plaintiff's] recertification form for FMLA leave on the basis of his physician's alleged failure to contact [Defendant] burdened and

interfered with rights to which [Plaintiff] was entitled under the FMLA." (*Id.*, ¶ 44.) There is no material dispute as to the facts regarding the January 2013 recertification; rather, the success or failure of this claim depends on the narrow legal question of Plaintiff's entitlement to FMLA leave, which in turn depends on the adequacy of Dr. Harris's certification forms. Defendant argues that it complied with the FMLA in denying certification, based on the insufficiency of Plaintiff's five certification forms and Dr. Harris's failure to respond with clarification. Plaintiff argues that all of Dr. Harris's forms were in fact substantially complete, and that Defendant's refusal to accept the forms based on pedantic technicalities was a violation of the FMLA.

Under 29 C.F.R. § 825.306, an employer may require medical certification from a health care provider when leave is sought because of an employee's own serious health condition, and "it is the employee's responsibility to provide the employer with complete and sufficient certification and failure to do so may result in the denial of FMLA leave." 29 C.F.R. § 825.306(e). Such certification is sufficient if it provides the date the serious health condition began, its probable duration, relevant medical facts, and a statement that the employee is unable to work. 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306. The employer may ask for this same information when seeking recertification of leave for an employee who has previously been granted FMLA benefits, and may also "provide the health care provider with a record of the employee's absence pattern and ask the health care provider if the serious health condition and need for leave is consistent with such a pattern." 29 C.F.R. § 825.308(e). The regulations also provide that a certification "is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed" and "is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive." 29 C.F.R. § 825.305(c). If the employer "finds a certification

incomplete," it must "provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d).

While Plaintiff argues that all of Dr. Harris's submissions were legally sufficient certifications, the record does not bear out such a contention. It is unnecessary here to wade into the parties' protracted sparring about which questions were answered insufficiently on which forms and whether, as Plaintiff contends, any insufficient answers should be excused because the information sought was "obvious" to Defendant in light of Plaintiff's ten-year history of FMLA leave at the company. The absence of an answer to question 22 (inquiring as to whether Plaintiff's past absence history is consistent with his condition) on all but the final form is dispositive. As noted above, the regulations explicitly permit an employer to require an answer to such a question on recertification, and it is undisputed that none of the first four forms Dr. Harris submitted contained an answer to this question. That this omission was no fault of Plaintiff's – because Defendant had inadvertently failed to mark the question as requiring an answer in the certification forms it initially provided to Dr. Harris – is irrelevant.

The January 17 deficiency notice informed Plaintiff and Dr. Harris that question 22 would need to be answered, and also identified insufficiencies in answers to other questions. Dr. Harris responded by faxing in an answer to question 22 alone. As such, on January 22, Defendant had no single form with all questions fully answered, and was instead faced with five forms for which "one or more of the applicable entries [had] not been completed," making them all insufficient under the plain language of the FMLA regulations. Plaintiff has cited to no authority suggesting that Defendant was obligated to cobble together one sufficient form from bits and pieces of five incomplete ones. In light of the inconsistent forms, Defendant took the permissible step of contacting Dr. Harris and requesting clarification. See 29 C.F.R. § 825.307(a)

(providing that "the employer may contact the health care provider for purposes of clarification and authentication of the medical certification (whether initial certification or recertification) after the employer has given the employee an opportunity to cure any deficiencies."). Only after roughly one month without a response from Dr. Harris did Defendant deny recertification of Plaintiff's FMLA leave.

Plaintiff relies on the Seventh Circuit's opinion in *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 886 (7th Cir. 2005) for support, but that case is distinguishable on its facts. In *Kauffman*, an employer immediately terminated the plaintiff for absences when his doctor's certification of medical incapacitation failed to check a box denoting incapacity lasting more than three days. The doctor had, however, written "bronchitis" next to the box in lieu of checking it, and the Seventh Circuit held that this was sufficient to certify the plaintiff's incapacity. *See Kauffman*, 426 F.3d at 886 ("We will not split hairs over the obvious. Writing 'bronchitis' next to the box was the equivalent of checking it."). While some of the "insufficiencies" Defendant identifies on the various forms are similarly technical deficiencies rather than real ones, the total absence of an answer to question 22 was unquestionably not. Moreover, the employer in *Kauffman* terminated the plaintiff immediately without giving him notice that the certification form was incomplete or an opportunity to correct deficiencies. *See Id*. ("FedEx could not win its case by arguing that the form was incomplete; in that event, FedEx would have been required to, but did not, notify Kauffman and give him the opportunity to cure the deficiency"). Here, Defendant did not deny Plaintiff's request for leave outright when faced with the incomplete forms, instead notifying Plaintiff of the deficiency and giving Dr. Harris one month to clarify exactly what his various responses meant.

In summation, Defendant was entitled under the FMLA and its implementing regulations to treat the five separate incomplete certification forms from Dr. Harris as insufficient, and was therefore justified in seeking clarification and denying Plaintiff's FMLA recertification when Dr. Harris did not provide such clarification. Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's interference claim relating to the January 2013 certification process.

Interference in Plaintiff's termination

The complaint also alleges that Defendant interfered with Plaintiff's FMLA rights by assessing the nine attendance points for Plaintiff's September 2013 absences. Defendant argues that it is entitled to summary judgment, because Plaintiff's failure to follow the company's established call-in procedures was a valid ground for termination. Plaintiff argues that his belief that he only needed to call in once to trigger seven days of leave was reasonable as a matter of law, and that Defendant therefore violated his right to leave by penalizing him for the absences.

It is well-established that even an employee entitled to FMLA leave is required to follow his employer's usual policies for notifying the employer when leave will be taken. 29 C.F.R. § 825.303(c) (permitting employers to require employees certified for unforeseeable FMLA leave "to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."); *Gilliam v. United Parcel Serv., Inc*., 233 F.3d 969, 972 (7th Cir. 2000) ("Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans."). Accordingly, the Seventh Circuit has held that terminating employees who fail to call in their FMLA leave is not a violation of the statute. *See, e.g*., *Lewis v. Holsum of Fort Wayne, Inc*., 278 F.3d 706, 710 (7th Cir. 2002) (affirming summary

judgment in favor of employer who fired plaintiff after she requested FMLA leave for a Friday but then failed to return to work until the next Thursday without further notice to the employer).

There is ample evidence from which a jury could conclude that Plaintiff did not follow Defendant's usual and customary call-in policy. The CBA, under which Plaintiff had worked for many years, unambiguously provided that notice of absence was required each day an employee would not come to work, though it could cover more than one day only if the employee so informed Defendant and kept Defendant advised thereafter. (Def.'s Ex. H, Dkt. # 54-8, at Art. XIII Section 3(f).) Similarly, Plaintiff's FMLA designation notice informed him "it is your responsibility to notify the Company *each day* you are to be absent for the reason identified in your leave request" and warned him that he would be disciplined under the absence policy for failing to notify Defendant of the dates of his absence. (Def.'s Ex. N, Dkt. # 54-14) (emphasis added.) Plaintiff's September 3, 2013 call stated three times that he was calling in absent "today" due to his FMLA leave, and made no mention of taking off any other days. Finally, Defendant's records indicate that every other employee with intermittent multi-day FMLA leave – including three that had leave durations of fixed periods – called in every day when they used their leave.

This dispute cannot be resolved at the summary judgment stage, however, because there is also evidence from which a jury could conclude either that Plaintiff's September 3 call did satisfy his notice obligations or that he was excused from doing so. Both Dr. Ivanevic's certification form and Plaintiff's FMLA Designation Notice specified his leave as "7 days" rather than "up to 7 days." The CBA allowed for notice of absence to cover more than one day if Defendant was informed of the duration; because Defendant already knew his leave period was exactly seven days long, the Court cannot say as a matter of law that Plaintiff's call was insufficient to trigger seven days of leave without further action on his part.

Even if Plaintiff violated Defendant's notice policy, a fact issue exists as to whether he was excused from doing so. As noted above, the FMLA's implementing regulations require that an employee comply with his employer's notice requirements "absent unusual circumstances." 29 C.F.R. § 825.303(c). From the evidence in the record, a jury could reasonably find that "unusual circumstances" existed here because Defendant's actions could have misled Plaintiff into believing that strict compliance with the notice requirements was not necessary. In Plaintiff's deposition, he related that when he asked for an explanation of how to use his leave Hendrix replied "If you call in tomorrow, you have up until seven days max to be off work…" While Hendrix went on to explain that Plaintiff could use less than the full seven days per episode, this does not necessarily mean that calling in every day was necessary – only that if Plaintiff returned before the seven days were up, however long he was gone would count as an episode and he would lose any of the seven days he had not used. Hendrix insisted in her deposition that she did not discuss the call-in requirements with Plaintiff at the meeting, but the question of who to believe is properly resolved by a jury rather than on summary judgment. The version of Hendrix's explanation related in Plaintiff's deposition may have led him to erroneously conclude that he was excused from affirmatively telling the company how long he would be absent. The fact that he later called in on September 5 supports an inference that Plaintiff believed he was in compliance with the notice procedures, as the CBA requires that an employee keep Defendant informed after giving multi-day notice and Plaintiff's call stated that "for the record" he was "still" off due to his FMLA leave.

Accordingly, the Court denies both parties' motions for summary judgment on Plaintiff's interference claim relating to his September absences and subsequent discharge.

*Count II: Retaliation*

Count II of the complaint alleges that Defendant retaliated against Plaintiff for exercising his rights under the FMLA, by (1) reevaluating his entitlement to FMLA leave, and (2) terminating him for taking FMLA leave to which he was entitled. (*Id.*, ¶¶ 49-52.)

As in other employment contexts, a plaintiff alleging retaliation must show that: "(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two." *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). A retaliation claim under the FMLA "requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman*, 426 F.3d at 884; *see also King v. Preferred Technical Gp.*, 166 F.3d 887, 891 (7th Cir. 1999). A plaintiff claiming retaliation need not prove that "retaliation was the only reason for her termination; [he] may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Lewis*, 523 F.3d at 741-42 (quotation marks omitted). To make out a charge of retaliation under the FMLA, a plaintiff may proceed under the direct or indirect methods of proof; in either case, a court employs the same framework as is used to establish retaliation under other labor statutes. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 n.3 (7th Cir. 2004) ("[W]e assess a claim of FMLA retaliation in the same manner that we would evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII.").

The basis for the first of Plaintiff's retaliation claims is unclear, as the complaint recites only that "[Defendant's] decision to reevaluate [Plaintiff's] FMLA leave and subsequent actions to date are in retaliation because [Plaintiff] exercised rights to which he was entitled under the FMLA." Plaintiff's pleadings do not clarify what actions specifically he alleges were retaliatory;

it is uncontested that an employer has the right to request periodic recertification of entitlement to FMLA leave. To the extent that this claim is based on Defendant's January 2013 denial of recertification, it fails because, as discussed above, Defendant had a legitimate non-retaliatory reason for initially denying Plaintiff's recertification request (namely, the insufficiency of Dr. Harris's certification forms and his failure to provide clarification). The second part of Plaintiff's retaliation claim – that his discharge was motivated by retaliatory animus against him for being a longtime user of FMLA leave – also fails, because Plaintiff has failed to offer sufficient evidence to make out a case of retaliation under the direct method of proof.[3]

Under the direct method of proof, Plaintiff "can survive summary judgment by creating a triable issue of whether the adverse employment action of which [he] complains had a discriminatory motivation." *Lewis*, 523 F.3d at 741 (quotation marks omitted). He need not prove that his FMLA-protected conduct was the sole factor in Defendant's decision to terminate him, only that "the protected conduct was a substantial or motivating factor in the employer's decision." *Culver v. Gorman & Co*., 416 F.3d 540, 545 (7th Cir. 2005). Proof can take the form of direct "smoking gun" evidence, but only a direct admission by the employer will typically satisfies the plaintiff's burden. *See Tank v. T–Mobile USA, Inc*., 758 F.3d 800, 805 (7th Cir. 2014) ("Direct evidence requires an admission of discriminatory intent."). More commonly, the direct method is proven by showing "a 'convincing mosaic' of circumstantial evidence from which a factfinder can make a reasonable inference of discriminatory intent." *Teruggi v. CIT*

---

[3] Plaintiff fails to specify under which method of proof he seeks to proceed. Under the indirect method, Plaintiff would have first establish a prima facie case of retaliation. Once he has done so, Defendant must articulate a legitimate, non-discriminatory reason for the termination; the burden then shifts back to Plaintiff to offer evidence that Defendant's stated reason was pretextual. *See Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013). To meet his prima facie burden in a retaliation claim, Plaintiff must establish that: "(1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." *Id*. As Plaintiff has directed no arguments towards any of these four elements and failed to mention the burden-shifting framework entirely, the Court infers that he seeks to proceed only under the direct method of proof.

*Grp./Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013). There is no direct admission of retaliation in the record. Instead, Plaintiff offers several pieces of circumstantial evidence which he asserts demonstrate Defendant's general animus towards employees who take FMLA leave. None of these, however, carries his burden of making a prima facie showing of retaliation.

First, Plaintiff asserts that when Defendant took the administration of its FMLA program in-house in 2012, it drastically cut the number of employees approved for FMLA leave. The parties dispute the meaning of Hendrix's deposition testimony regarding the company's FMLA statistics over time, but it is unnecessary to resolve this dispute. Even accepting Plaintiff's interpretation that the number of employees on FMLA leave decreased between 2012 and the date of Hendrix's deposition, there is no evidence that this decrease was engineered by Defendant. FMLA leave is often of a temporary nature; employees take time off to deal with their own injuries and illnesses as well as those of other family members, and when the crisis is over the leave ends. Plaintiff has offered no evidence that this decrease was a result of conscious action by Defendant, rather than a natural random fluctuation in the number of employees requesting leave.

Second, Plaintiff cites his own difficulties in his January 2013 recertification process, arguing that Defendant's objections to his application "were so petty, ridiculous, and inconsistent" as to raise an inference of animus. (Pl.'s Mot. Summ. J., Dkt. # 66 at 20.) As discussed above, Defendant's refusal to accept Dr. Harris's incomplete forms was justified under the FMLA, and such refusal is not sufficient to support an inference of animus. Particularly undercutting Plaintiff's position is the fact that Defendant approved him for FMLA certification when he applied immediately after the initial denial, including allowing him to take FMLA leave while this second application was pending.

Third, Plaintiff complains that the long meeting he was forced to attend after returning from his September absences shows that Defendant "tried to bait [Plaintiff] into doing or saying something that would justify his discharge for insubordination." (*Id.* at 21.) Even accepting Plaintiff's characterization of the meeting at face value, however, it does not constitute indirect proof of anti-FMLA animus. Plaintiff's deposition makes clear that the meeting became contentious and that the manager present accused him of raising his voice and acting disrespectfully. There is nothing in Plaintiff's account to suggest that any hostility towards him at the meeting arose because of his history of taking FMLA leave, rather than because he was arguing his viewpoint vigorously. Plaintiff cites to cases holding that setting up an employee for discharge is evidence of retaliatory motive, but it is uncontested that despite the manager's threats Plaintiff was not disciplined for insubordination but rather for the absences which had already occurred prior to the meeting.

Fourth, Plaintiff cites the written warning he received on June 18, 2013 as evidence that Defendant had a retaliatory motive. Even based on Plaintiff's version of events, however, he left his work station for 35-40 minutes to discuss his FMLA application with Hendrix and his union steward. He does not allege that he had permission to exceed his normal 10-minute break time, and does not dispute Defendant's assertion that written warnings for overstaying breaks are common among employees at the Franklin Park plant. Moreover, the warning did not result in any tangible consequences to Plaintiff, and is therefore at best weak evidence that Defendant harbored any retaliatory animus towards Plaintiff.

Finally, Plaintiff identifies J.A. as a similarly-situated employee who was not on FMLA and was not fired when he exceeded 9 attendance points. While Plaintiff points out that J.A. was not terminated because he had never received a warning as required under the CBA and Plaintiff

never received a warning either, Plaintiff has failed to show that he and J.A. were similarly situated. Factors a court will look to in determining whether two employees are similarly situated include whether the employees: "1) held the same job description, 2) were subject to the same standards, 3) were subordinate to the same supervisor, and 4) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs., Inc*., 336 F.3d 520, 532 (7th Cir. 2003). Plaintiff is responsible for identifying others who were "directly comparable in all material respects." *Hudson v. Chi. Transit Auth*., 375 F.3d 552, 561 (7th Cir. 2004) (quoting *Patterson v. Avery Dennison Corp*., 281 F.3d 676, 680 (7th Cir. 2002)). He has not met that burden, having presented *no* information regarding J.A. other than the fact that he missed work, did not receive a warning, and was not terminated. A mere assertion that another employee missed a similar amount of work and was not fired – without any evidence regarding the circumstances of that employee's absences or his position in the company – is not enough circumstantial evidence of retaliation to survive summary judgment.

Accordingly, none of the circumstantial evidence Plaintiff offers supports an inference that Defendant was motivated by retaliatory animus against employees who utilize FMLA leave. Bolstering this conclusion is the fact that Plaintiff had been taking FMLA leave for over a decade, so there is no suspicious temporal proximity between his protected activity and his discharge. Plaintiff therefore fails to create a triable issue of fact as to retaliation under either method of proof, and Defendant is entitled to summary judgment as to Count II of Plaintiff's complaint.

**Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment [51] is granted in part and denied in part. Defendant is entitled to summary judgment as to Count II of the complaint and the portion of Count I involving Plaintiff's January 2013 FMLA certification process. Plaintiff's motion for summary judgment [65] is denied.

**SO ORDERED.**                                    **ENTERED:  July 10, 2015**

**HON. RONALD A. GUZMÁN**
**United States District Judge**